PEOPLE ex rel. BYRNE v. BAKER, Police Com'r.

(Supreme Court, Appellate Division, Second Department.   October 7, 1910.)

MUNICIPAL CORPORATIONS (§ 185*)—POLICE DEPARTMENT—DISCHARGE OF PO-
    LICEMAN—VIOLATION OF RULES—EVIDENCE.
      Evidence *held* insufficient to sustain specifications against a policeman
    charging conduct unbecoming an officer, consisting of alleged assault on a
    patrolman and intoxication, justifying relator's removal from the force.
      [Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §
    185.*]

Certiorari by the People, on the relation of James F. Byrne, against
William F. Baker, Police Commissioner of New York City, to review
defendant's determination dismissing relator from his place on the
force.   Reversed, and reinstatement ordered.

Argued before WOODWARD, JENKS, THOMAS, RICH, and
CARR, JJ.

Edwin Welling Cady, for relator.
James D. Bell (Jesse W. Johnson, on the brief), for respondent.

WOODWARD, J.   The relator was dismissed from his place on
the police force of the city of New York, upon a charge of conduct un-
becoming an officer—the specifications being that the relator had inter-
fered with Patrolman Charles Hagedorn in the performance of his
duty, by taking hold of a prisoner and attempting to pull him away
from Patrolman Hagedorn, who then and there had one Duffy under
arrest; that the relator, being in the patrol wagon, under arrest, then
and there assaulted said Charles Hagedorn, by striking him with his
clenched fist on the nose; and that relator was found to be suffer-
ing from the effects of some intoxicating agent or agents.   The first
specification was overthrown by the deputy commissioner who con-
ducted the trial, and the relator was found guilty of the other two
specifications, and discharged from the force.

The evidence disclosed the facts to be that the relator, who was off
duty for 24 hours, commencing at 2 o'clock in the afternoon, went with
a friend to visit another friend in the evening; that the two friends
were returning home about 1:30 in the morning of the following day,
when they heard Patrolman Hagedorn rapping for help; that the re-
lator ran to his assistance and threw open his coat, displaying his
badge, and took hold of the prisoner to aid; that Hagedorn told him to
get away or he would put him in the wagon, too, and that Hagedorn
did subsequently arrest the relator; that when Hagedorn had secured
a patrol wagon, and had landed his prisoner, with the relator and oth-
ers, in the wagon, a third officer appeared and took his place on the
rear step of the wagon to aid; that on the way to the station house
one of the prisoners made an effort to escape, and in the mêlée which
ensued Patrolman Hagedorn received a blow upon the nose; but the
evidence is far from conclusive that the relator struck the blow with
the intention of doing so, if, indeed, he struck at all.   No one saw the
relator strike Hagedorn, and the relator testifies that he did not intend

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to strike him, and that the first he knew of the alleged assault was when he was charged with it at the police station. The relator and the third officer agree that the relator was trying to assist in preventing the escape of one of the prisoners, and all of the facts and circumstances point quite as clearly to an accidental blow, or to the blow having been struck by some one other than the relator, as to an assault by the relator. He was arraigned in police court on the same charge, and was acquitted, and the evidence here is not of a character which would justify a conviction for assault.

On the question of the relator being "found to be suffering from the effects of some intoxicating agent or agents," the evidence is quite to the contrary. True, there was testimony of the relator and his friend that the relator had drank two glasses of beer at 9 in the evening, and two glasses more just before the time of the alleged interference; but the police surgeon examined him, and found that he was not intoxicated in the ordinary sense of that term, and that he was prepared to take care of himself—in fact, that he was practically normal. When it is remembered that the relator was off duty, and that he was not to resume his duties until 2 o'clock the following afternoon, it is not fair to hold him guilty of any offense against the rules and regulations of the police department because he had taken a few glasses of beer, which had not in any manner disqualified him for taking care of himself.

The only fair inference from the testimony is that the relator, out for an evening, took a few glasses of beer, and, on hearing the call of an officer for help, went to him and attempted to do his duty; that he continued in this attitude, and helped to prevent the escape of a prisoner, notwithstanding that he was technically under arrest, believing that it would all be straightened out on arriving at the police station; and that the alleged assault upon Hagedorn was the result either of accident or of design on the part of some one other than the relator. No evidence is offered to show that the relator had any purpose of assaulting the officer, and the case is without substantial merit.

The determination of the commissioner should be reversed, and the relator reinstated, with $50 costs and disbursements. All concur.